**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| JASON PARKMAN | |
| | CIVIL ACTION |
| VERSUS | |
| | NO. 20-883-JWD-EWD |
| W&T OFFSHORE, INC., ET AL. | |

**RULING ON PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON TIMELINESS**

Before the Court is the *Motion for Partial Summary Judgment on Timeliness* ("Motion") (Doc. 30) filed by plaintiff Jason Parkman ("Parkman" or "Plaintiff"). It is opposed by Baker Hughes Energy Services LLC and Baker Hughes Oilfield Operations LLC (collectively, "Baker Hughes") (Doc. 42), W&T Offshore, Inc. ("W&T") (Doc. 43), and Halliburton Company and Halliburton Energy Services, Inc. (collectively, "Halliburton") (Doc. 44) (collectively, "Opposing Defendants"). Plaintiff filed a reply. (Doc. 45.) The Court has carefully considered the law, facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, the Motion is GRANTED.

  **I.  BACKGROUND**

Plaintiff alleges that on August 25, 2018, he sustained serious injuries while working for H&P[1] on an H&P "offshore drilling rig" off the coast of Louisiana. (Doc. 1-1 at 4, ¶ 1; 7-8, ¶¶ 18, 21 (Petition); Doc. 1-1 at 16, ¶ 1 (affidavit of Plaintiff); Doc. 30-2 at 1, ¶ 1 (Plaintiff's Statement of Undisputed Facts).) According to Plaintiff, "[t]he drilling rig (no. 107) was a fixed platform on the Ship Shoal block of the Outer Continental Shelf" of the Gulf of Mexico. (Doc. 30-2 at 1, ¶ 2,

---

[1] Among the defendants named in Plaintiff's suit are Helmerich & Payne International Drilling Co., Helmerich & Payne Offshore, LLC, and Helmerich & Payne, Inc. In Plaintiff's Petition (Doc. 1-1 at 4 *et seq.*), all three defendants are referred to collectively as the "H&P Defendants." (Doc 1-1 at 8, ¶ 21 n.3.) Therefore, the Court will refer to these defendants collectively as "H&P" or the "H&P Defendants."

(citing Doc. 18-2 at 2 (accident report from incident) and Doc. 18-3 (exhibit showing Ship Shoals on the Outer Continental Shelf))); *see also* Doc. 38 at 1 (Joint Status Report).) Therefore, he "brings his claims under Louisiana law under the OCSLA."[2] (Doc. 1-1 at 5, ¶ 2.) However, he "pleads in the alternative that his claims should be brought under the Jones Act[3] and general maritime law because whether Plaintiff is a Jones Act seaman is a factual issue for the jury to decide." (*Id*.) Plaintiff also alleges that "[a]t all relevant times Plaintiff was assigned to and contributing to the mission of the vessel in question. The vessel in question was in navigation at all relevant times. Plaintiff spent more than one third of his time working offshore on the same vessel or vessels under common control." (*Id*. at 8, ¶ 25.) However, Plaintiff does not name the vessel, does not give its location (other than to say it was in navigable waters), and does not state Plaintiff's position aboard the vessel, how he contributed to its mission, or how the vessel contributed to the accident.

Plaintiff filed a tort suit in state court on November 20, 2020, against various defendants. (Doc 1-1 at 4.) On December 29, 2020, the case was removed to this Court. (Doc. 1.) "Plaintiff has not filed a motion to remand." (Doc 38 at 1.)

II. **SUMMARY OF ARGUMENTS OF THE PARTIES**

In his Motion, Plaintiff asks this Court to "declare that his claims are timely under *Cormier v. Clemco Services Corp*., 48 F.3d 179, 183 (5th Cir. 1995)." (Doc. 30 at 1.) When an accident, such as this one, occurs on a fixed platform on the Outer Continental Shelf, "OCSLA will borrow the law of the adjacent state – here, Louisiana – to control such claims." (Doc. 30-1 at 3, citing *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 975-978 (5th Cir. 1999).) Plaintiff acknowledges that

---

[2] Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*.
[3] 46 U.S.C. § 30104 *et seq*.

Louisiana's tort prescriptive period is one year. (*Id*.) Plaintiff concedes his suit was filed on November 20, 2020, more than two years after his accident of August 25, 2018. (*Id*. at 1-2.)

However, Plaintiff argues that "[t]he undisputed evidence shows that Mr. Parkman started receiving weekly payments under the LHWCA[4] within one month of his paralyzing accident and that he has continued to receive them all the way up until the filing of his lawsuit." (*Id*. at 4 citing Doc 1-1 at 16-17, Parkman's affidavit.) The Fifth Circuit in *Cormier v. Clemco Services Corp.* held that "when an injured employee … receives payments under the LHWCA, those payments serve to interrupt Louisiana's law of prescription for third party tort claims." (*Id*. at 3.) Thus, insists Plaintiff, his lawsuit is timely and this Court "should … so hold." (*Id*. at 4.)

Baker Hughes argues that *Cormier* and *Billizon v. Conoco, Inc*., 864 F. Supp. 571 (E.D. La. 1994) (relied upon by the court in *Cormier*), are distinguishable in that, in those cases, (1) the plaintiffs filed suit within a year of the accident; (2) it is not clear in *Billizon* whether the plaintiff filed a formal claim for LHWCA benefits within a year; (3) unlike the present case, the equities in *Cormier* favored allowing the plaintiff's suit to proceed; and (4) in *Billizon*, "[t]he issue of interruption only arose because the original four (4) defendants were dismissed via summary judgment." (Doc. 42 at 2-3.) In this case, "the plaintiff did not file any formal claims, against anyone, within one (1) year of his accident" and therefore he "slept on his rights." (*Id*. at 4.) Finally, Baker Hughes urges that if the Court rejects these arguments, *Cormier* "should be overturned" since is application in this case would "lead to indisputably absurd and unjust results." (*Id*. at 4-7.)

W&T concedes that "in many OCSLA cases involving the payment of LHWCA benefits, plaintiffs are permitted to file suit against third party tortfeasors outside of Louisiana's one year prescriptive period, based solely on the notion that such payments constitute an

---
[4] Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901, *et seq*.

'acknowledgement' of the plaintiff's rights to such benefits" but these cases are "wrongly decided." (Doc. 43 at 6-7.) It points out that the rule permitting interruption of prescription against solidary tortfeasors in the context of the LHWCA "is in conflict with Louisiana's own state workers' compensation scheme, making it a procedural outlier…." (*Id.* at 8, citing La. R.S. 23: 1204; La. Civ. Code art. 3464; *Gary v. Camden Fire Ins.*, 676 So.2d 553 (La. 1996).) Finally, W&T argues that "discovery is not yet underway" and the details of when Plaintiff's LHWCA benefits began and whether and when they were discontinued is unknown. (*Id.* at 5.) Therefore, Plaintiff's Motion is premature under Federal Rule of Civil Procedure 56(d). (*Id.* at 4-5.)

Halliburton concedes that "*Cormier* is controlling precedent for this Court" (Doc. 44 at 4), but insists that, in light of *Billizon's* observation that interruption "could prejudice defendants when 'years old' claims are asserted because workers' compensation payments were ongoing," more evidence is needed as to the details of "what notice, if any…, [were] provided to defendants … who were not Parkman's employer." (*Id.*) The lack of other information (like "whether [his] [compensation] payments continued without interruption") also makes this Motion premature. (*Id.* at 5.)

Plaintiff replies that, despite W&T's attempt to distinguish *Cormier* and, alternatively, to declare it "wrongly decided," *Cormier* is controlling, and this Court is bound to follow it. (Doc. 45 at 2–3, citing *Guillory v. Weatherford US, Inc.*, 1995 WL 581682 (5th Cir. 1995).) It points to six relatively recent district court opinions applying *Cormier* in a manner consistent with that advocated by Plaintiff. (*Id.*, citations omitted.) It notes that in motions filed by other defendants in this case, these defendants argue for the application of OCSLA so as to deprive Plaintiff of certain remedies but nonetheless, in response to those motions, Plaintiff argues only for the consistent and simultaneous application of the law in ruling on those motions and the present Motion. (*Id.* at 1,

citing Docs. 18, 19, 24 and 26.) He argues that Baker Hughes, W&T and Halliburton "appear to acknowledge that Mr. Parkman's affidavit in the record declares that he began receiving these LHWCA benefits within [a] month of the accident and has continued to receive them presently" but nonetheless, they want additional discovery. (*Id*. at 4.) Plaintiff does not object to discovery as long the Court makes "a consistent ruling on OCSLA that is applied at the same time." (*Id*. at 4-5.)

### III. STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## IV. DISCUSSION

### A. Jurisdiction and Governing Law

This case was originally filed in state court and removed to this Court pursuant to OCSLA's grant of original jurisdiction as well as diversity of citizenship jurisdiction. (Doc. 1 at 2; Doc. 38 at 1-2.) Plaintiff "brings his claims under Louisiana law under the OCSLA." (Doc. 1-1 at 5, ¶ 2.) According to Plaintiff, he was injured on "a fixed platform on the Ship Shoal block of the Outer Continental Shelf" of the Gulf of Mexico. (Doc. 30-1 at 1, ¶ 2, citing Doc. 18-2 at 2 (accident report from incident); Doc. 18-3 (exhibit showing Ship Shoal block of the Outer Continental Shelf));[5] *see also* Doc. 38 at 1 (Joint Status Report).) Baker Hughes, W&T and Halliburton all concede that Plaintiff was injured while working on a fixed platform on the Outer Continental Shelf. (*See* Plaintiff's Statement of Undisputed Facts, number 2, Doc. 30-2 and responses, Docs. 42,[6] 43 and 44; *see also* Doc. 38 at 1-2.)

In their motions to dismiss, the H&P Defendants contend the same, i.e., that this was a fixed platform related accident on the Outer Continental Shelf and therefore it is governed by the OCSLA which incorporates the LHWCA as the workers' compensation scheme and makes LHWCA the exclusive remedy against H&P to the exclusion of the Jones Act and general maritime law. (Doc. 18 at 1-2; Doc. 19 at 2; and Doc. 24 at 2.) Halliburton argues the same in its Motion to Dismiss. (Doc. 26 at 2.)

---

[5] The Accident Report clarifies that the fixed platform where the accident occurred was located on Ship Shoal Block 349-A (Mahogany). (Doc. 18-2 at 1-2.)
[6] Baker Hughes qualifies its admission by clarifying that drilling rig no. 107, while itself not a fixed platform, "was permanently attached to a fixed platform on the Outer Continental Shelf." (Doc. 42-1 at 1, ¶ 2.)

The facts in the record, scant though they are, demonstrate that Plaintiff was injured while working as a floor hand for H&P on H&P drilling rig 107, attached to W&T's Ship Shoal 349A (Mahogany) Fixed Platform on the Outer Continental Shelf, Ship Shoal Block 349. He was injured when, as he was being "hoisted upwards…[,] the three-eighths inch safety static line became snagged on one of the fingers located on the monkey board." (Doc. 18-2 at 2.) According to the accident report, the snagging of the safety static line created "forces in opposite directions …[which] resulted in the Floorhand being pulled in both directions." (*Id*.)

Although he pleads in the alternative that his claims are "brought under the Jones Act and general maritime law because whether Plaintiff is a Jones Act seaman is a factual issue for the jury to decide," (Doc, 1-1 at 5), none of the facts alleged in his Petition support maritime jurisdiction or Jones Act coverage and he has not moved to remand the case to state court on this or any other basis. (Doc. 38 at 1.) Without explanation or elaboration, Plaintiff alleges in his Petition that "[a]t all relevant times Plaintiff was assigned to and contributing to the mission of the vessel in question. The vessel in question was in navigation at all relevant times. Plaintiff spent more than one third of his time working offshore on the same vessel or vessels under common control." (Doc. 1-1 at 8, ¶ 25.) But Plaintiff does not name the vessel, does not give its location (other than to say it was in navigable waters), and does not state Plaintiff's position aboard the vessel, how he contributed to its mission, or how the alleged vessel contributed to his accident.

In sum, Plaintiff provides no factual support for this alternative allegation of maritime/Jones Act jurisdiction in connection with the present Motion or in his oppositions to the motions to dismiss filed by the H&P Defendants and Halliburton. (Docs. 28, 29, 32, and 33.) By everyone's account, including Plaintiff's, he was assigned to and working on a fixed platform at the time of his accident. If there was any doubt about the status of W&T's Ship Shoal 349-A

(Mahogany) Fixed Platform as a fixed platform and not a vessel (and this Court has none), this was a specific finding in *Ross v. W&T Offshore, Inc.*, 357 F. Supp. 3d 554, 563 (E.D. La. 2018) ("[This Platform] cannot be classified as a vessel under Fifth Circuit precedent."); *Ross v. W&T Offshore, Inc.*, No. 17-8689, 2019 WL 186670, at *2 (E.D. La. Jan. 14, 2019) (applying OCSLA to W&T Ship Shoal 349-A platform where "[p]laintiff was injured while working on an oil and gas platform located on the Outer Continental Shelf.").

The result is that this case is governed by the OCSLA which dictates that LHWCA is the workers' compensation remedy accorded to Plaintiff against his employer. 43 U.S.C. § 1333(b); *Ross*, 2019 WL 186670, at *1 ("Section 1333(b) of the OCSLA makes workers' compensation coverage under the LHWCA an injured employee's exclusive remedy against an employer for injuries occurring on a fixed platform on the Outer Continental Shelf."). The tort law is that of the adjoining state (in this case, Louisiana) unless there is an inconsistent federal law. 43 U.S.C. § 1333(a)(2)(A); *Bloodsaw v. Helmerich & Payne, Inc.*, 177 F.3d 978, No. 98-30536, 1999 WL 197115, at *1 (5th Cir. 1999) ("Bloodsaw's injury occurred on the Outer Continental Shelf off the coast of Louisiana, and under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., his claim against Vastar is governed by Louisiana's tort law.") (citing *Cormier v. Clemco Servs. Corp.*, 48 F.3d 179, 181 (5th Cir. 1995)). As such, Louisiana's one-year tort prescriptive period applies. *Id*. at 2–3.

### B. Timeliness of Parkman's Suit

In short, Plaintiff is correct that the issue of the timeliness of Parkman's suit is controlled by the Fifth Circuit's decision in *Cormier* which held that "an insurance carrier which voluntarily pays workers' compensation benefits under the LHWCA acknowledges the employee's right to these benefits and interrupts prescription against all solidary obligors." 48 F.3d at 183. Here, the

uncontradicted affidavit of Parkman shows he began receiving LHWCA benefits within a month of his accident and was receiving them at least until the date his affidavit was signed, the same day his lawsuit was filed.[7] In an affidavit of the Claims Examiner handing Plaintiff's workers' compensation claim (Nikki Flatowicz of Sedgwick Claims Management Services, Inc.) filed on June 2, 2021, she stated that "Mr. Parkman has continuously received voluntary payments of benefits from Helmerich & Payne (through Sedgwick) under the Longshore and Harbor Workers' Compensation Act from the date of the accident and injury on August 25, 2018, with payments having continued to be made to present." (Doc. 52-1 at 2.) "The payments to Mr. Parkman have been continuous and without interruption." (*Id*.)

*Cormier* continues to be controlling in the Fifth Circuit. *See, e.g. Guillory v. Weatherford US, Inc.*, 68 F.3d 468, No. 95-30228, 1995 WL 581682 (5th Cir. 1995) ("The result in this case is controlled by *Cormier v. Clemco Services Corp*., 48 F.3d 179 (5th Cir. 1995), which was decided after the district court ruled that Guillory's action is time barred. We therefore vacate the judgment of the district court and remand for further proceedings."); *Bloodsaw*, 1999 WL 197115, at *1–2 (recognizing that *Cormier* "held that the voluntary payment of workers' compensation benefits by an employer under the [LHWCA] operated to interrupt the prescriptive period" but holding *Cormier* inapplicable where no LHWCA payments had been made for over a year before suit was filed.); *Raynes v. McMoran Expl. Co*., No. 10-1730, 2010 WL 4364109, at *4 (E.D. La. Oct. 26, 2010) ("[u]nder Louisiana law, a worker's compensation insurer and a third-party tortfeasor are solidary obligors to an injured employee." (quoting *Cormier*, 48 F.3d at 181.); *Ross v. W&T Offshore, Inc*., No. 17-8689, 2018 WL 3970679, at *4 (E.D. La. July 17, 2018) (holding that where

---

[7] According to Plaintiff's affidavit, he began receiving LHWCA payments from H&P's insurer "within a month of the incident" and "are still being paid to me voluntarily…currently." (Doc. 1-1 at 17.) The affidavit was signed on November 20, 2020, the same day as the filing of his suit. (*Id*. at 4.) The Opposing Defendants have offered no evidence which contradicts Parkman's affidavit.

the first LHWCA "payment occurred within a month of the accident …, every payment thereafter restarted the one-year prescriptive period, as to all solidary obligors," and denying the defendant's motion for summary judgment based on prescription.).

The Court rejects Baker Hughes' attempt to distinguish *Cormier* (Doc. 42 at 2-3) since the distinctions it points to make no legal difference. The fact that in *Billizon,* the plaintiff may have filed a formal claim for LHWCA benefits within a year is irrelevant since *Cormier* held it was the voluntary payment of benefits which tolled prescription. Baker Hughes' argument that, unlike the present case, the equities in *Cormier* favored allowing the plaintiff's suit to proceed is of no moment because *Cormier* did not base it's ruling on equities. The fact that in *Cormier*, the plaintiffs filed suit within a year of the accident is irrelevant since it was the defendant sued after a year which moved for summary judgment and the court based its rejection of that motion on the voluntary payments of LHWCA benefits. Finally, the fact that in *Billizon*, "[t]he issue of interruption only arose because the four (4) original defendants were dismissed via summary judgment" is of no moment since this had nothing to do with the court's holding or reasoning. (Doc. 42 at 3.)

The next argument raised by the Opposing Defendants is that *Cormier* was "wrongly decided" and this Court should overturn it. The Court disagrees that *Cormier* was wrongly decided but, even if this was the Court's opinion, this Court is bound to follow binding Fifth Circuit precedent. *United States v. Avelar-Castro*, 27 F. Supp. 3d 686, 694 (E.D. La. 2014), *aff'd*, 637 F. App'x 177 (5th Cir. 2016) ("The Court declines the defendant's invitation to disregard Fifth Circuit precedent; U.S. Fifth Circuit precedent is binding on this Court."). That Louisiana's workers' compensation scheme treats this issue differently from LHWCA and *Cormier* is also irrelevant.

Finally, the Opposing Defendants argue that, under Federal Rules of Civil Procedure 56(d), additional discovery is warranted since "the only evidence establishing that Plaintiff has received [LHWCA] benefits is Plaintiff's self-serving affidavit." (Doc. 43 at 5, W&T's opposition.) W&T argues that "additional discovery [is needed] to establish that Plaintiff began receiving LHWCA benefits within a year of the accident and has consistently received such benefits within the year prior to his initiation of the lawsuit against Defendants." (*Id.*)

At a status conference held via Zoom on May 26, 2020 (Doc. 51), the Court asked the Opposing Defendants specifically what information necessary for the Court to rule on the present Motion was lacking in the record. Counsel for Halliburton responded that Plaintiff's affidavit was not clear as to whether he has received benefits continuously since the benefits began or whether the payments were interrupted for some period of time. Counsel for Plaintiff responded that Plaintiff has continuously received benefits since the initial payment until today. The Court ordered Plaintiff "to file a supplemental affidavit or other documentary proof that LHWCA payments have been continuously [made] from with a month of Plaintiff's accident until today." (Doc. 51 at 1.)

In his initial affidavit, Plaintiff stated he "received … voluntary payments under the LHWCA starting within a month of the incident…[and] [t]hose LHWCA benefits are still being paid to me voluntarily by H&P's insurer currently." (Doc. 1-1 at 17.) The suit was filed the same day as his affidavit. (Doc. 1-1 at 4.) Plaintiff filed two supplemental affidavits on June 2, 2021 in response to the Court's order. One was from Plaintiff in which he added that "[t]he voluntary LHWCA payments were paid to me continuously from within a month of the incident up to present." (Doc. 52 at 1.) The second affidavit was from the Sedgwick LHWCA workers' compensation adjuster confirming that the payments to Plaintiff have been continuous and

uninterrupted during this period. (Doc. 52-1 at 2.) The Opposing Defendants have offered no evidence to contradict or challenge in any way the information provided in the three affidavits.

The fact that Plaintiff's affidavits may be self-serving does not gainsay (in this case) their unchallenged truth.

> A party's own testimony is often "self-serving," but [a court] do[es] not exclude it as incompetent for that reason alone." Instead, testimony based on personal knowledge and containing factual assertions suffices to create a fact issue, even if it is self-serving. In fact, "characterizing a party's testimony as 'self-serving' is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'

*Hardy v. Wood Grp. PSN, Inc.*, No. 13-775, 2014 WL 1664236, at *3 (W.D. La. Apr. 25, 2014) (quoting *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989)).

As the Fifth Circuit has noted, "[i]f all 'self-serving' testimony were excluded from trials, they would be short indeed." *C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011).

The burden is on Opposing Defendants to come forward with competent summary judgment evidence to raise an issue of material fact if they can. "[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co.,* 475 U.S. at 568–87 (internal citations omitted). They have not done so.

### V. CONCLUSION

For the foregoing reasons, Jason Parkman's *Motion for Partial Summary Judgment on Timeliness* (Doc. 30) is granted and the Court holds that, pursuant to *Cormier v. Clemco Services Corp.*, 48 F.3d 179 (5th Cir. 1995), the claims filed in his Petition for Damages on November 20, 2020 were timely filed.

Signed in Baton Rouge, Louisiana, on June 21, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**