UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JASON PARKMAN          C.A. NO.: 3:20-CV-883-JWD-EWD

VERSUS

W&T OFFSHORE, INC., ET AL

### RULING ON MOTIONS TO DISMISS BY HELMERICH & PAYNE INTERNATIONAL DRILLING CO., HELMERICH & PAYNE OFFSHORE, LLC, AND HELMERICH & PAYNE, INC.

Before the Court are three related motions to dismiss: the first is *Helmerich & Payne International Drilling Co.'s Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims for Failure to State a Claim* (Doc. 18) brought by Helmerich & Payne International Drilling Co. ("H&P IDC"). It is opposed by plaintiff Jason Parkman ("Parkman" or "Plaintiff"). H&P IDC filed a reply. (Doc. 36.) The second is *Helmerich & Payne Offshore, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims for Failure to State a Claim* (Doc. 19) brought by Helmerich & Payne Offshore LLC ("H&P Offshore"). Plaintiff opposes it (Doc. 29) and H&P Offshore filed a reply. (Doc. 37.) The third is *Helmerich & Payne, Inc.'s Motion to Dismiss Under Rule 12(b)(2) and Alternatively Rule 12(b)(6)* (Doc. 24) brought by Helmerich & Payne, Inc. ("H&P Inc."). Plaintiff opposes (Doc. 32) and H&P Inc. filed a reply. (Doc. 39.)

In Plaintiff's Petition (Doc. 1-1 at 4, *et seq.*), all three defendants are referred to collectively as the "H&P Defendants" (*Id.* at 8, ¶ 21, n.3). Except as to the allegations regarding agents for service of process, Plaintiff makes no distinction among them. Therefore, where the arguments of the movers are the same, the Court will refer to movers collectively as "H&P" or "H&P Defendants."[1] The Court has carefully considered the law, facts in the record, and the arguments

---

[1] There are defenses common to all three H&P Defendants, but H&P Inc. raises a separate reason for dismissal not raised by the other H&P Defendants: lack of personal jurisdiction. (Doc. 24 at 1; Doc. 24-1 at 3-9.) In the alternative, H&P Inc. adopts the arguments made by H&P IDC. (Doc. 24 at 2.) H&P Offshore also raises an independent argument for dismissal, i.e. because it "was not formed as an entity until October 17, 2018," it did not exist at the time of the accident and therefore could not possibly have been at fault in any way for the accident. (Doc. 19-1 at 8 -9.) Like H&P

and submissions of the parties and is prepared to rule. For the following reasons, the H&P Motions are GRANTED.

I.     BACKGROUND

Plaintiff filed a tort suit in state court on November 20, 2020 against various defendants including the H&P Defendants. (Doc. 1-1 at 4.) On December 29, 2020, the case was removed to this court. (Doc. 1.) "Plaintiff has not filed a motion to remand." (Doc. 38 at 1.)

Plaintiff alleges that on August 25, 2018, he sustained serious injuries while working for H&P on an H&P "offshore drilling rig" off the coast of Louisiana. (Doc. 1-1 at 4, ¶ 1; 7-8, ¶¶ 18, 21 (Petition); Doc. 1-1 at 16, ¶ 1 (affidavit of Plaintiff attached to Petition).)[2] Plaintiff "brings his claim under Louisiana law under the OCSLA."[3] (Doc. 1-1 at 5, ¶ 2.)

However, Plaintiff "pleads in the alternative that his claims should be brought under the Jones Act[4] and general maritime law because whether Plaintiff is a Jones Act seaman is a factual issue for the jury to decide." (*Id.*) Without explanation or elaboration, Plaintiff alleges that "[a]t all relevant times Plaintiff was assigned to and contributing to the mission of the vessel in question. The vessel in question was in navigation at all relevant times. Plaintiff spent more than one third of his time working offshore on the same vessel or vessels under common control." (*Id.* at 8, ¶ 25.) Plaintiff does not name or otherwise identify the "vessel in question", does not give its location (other than to say it was in navigable waters), and does not state Plaintiff's position aboard the vessel or how he contributed to its mission.

---

IDC, H&P Offshore also argues that it is immune from suit in tort by virtue of LHWCA's exclusivity provision. (Doc. 24 at 2.)

[2] Plaintiff filed a *Motion for Partial Summary Judgment on Timeliness*. (Doc. 30.) In his Statement of Undisputed Facts, he represents that "[t]he drilling rig (no. 107) was a fixed platform on the Ship Shoal block of the Outer Continental Shelf" of the Gulf of Mexico. (Doc. 30-2 at 1, ¶ 2 (citing Doc. 18-2 at 2 (accident report from incident) and Doc. 18-3 (exhibit showing Ship Shoals on the Outer Continental Shelf))); *see also* Doc. 38 at 1 (Joint Status Report).)

[3] Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*

[4] 46 U.S.C. §30104, *et seq.*

Plaintiff alleges that the H&P Defendants collectively were negligent and grossly negligent in causing Plaintiff's injuries (*id*. at 10-11, ¶ 35), and in the alternative, "[t]he dangerous nature and manner of work being performed made it substantially certain that Plaintiff would be injured…[but] proceeded nevertheless." (*Id*. at 11, ¶ 36.) Plaintiff alleges in the further alternative that the H&P Defendants, as his Jones Act employers, owe maintenance and cure and punitive damages. (*Id*. at ¶ 38.)

Plaintiff alleges that following his accident, "H&P's insurer began voluntarily paying" him LHWCA benefits "starting within a month of the incident" and which were still being paid to him at the time he signed his affidavit on November 20, 2020. (Doc. 1-1 at 17.)

## II.   ARGUMENTS OF THE PARTIES

### A.  H&P IDC's Motion to Dismiss

H&P IDC argues that because this accident occurred on a fixed platform on the Outer Continental Shelf, it is governed by OCSLA. (Doc. 18 at 1-2.) As such, Plaintiff's exclusive remedy against H&P IDC is workers' compensation under LHWCA and Plaintiff has no tort cause of action including under Louisiana law, for "substantial certainty," or under the Jones Act and general maritime law. (*Id*. at 2 (citing 33 U.S.C. § 905(a)).)

In his opposition, Plaintiff concedes that his claim is covered by LHWCA and that he has "received LHWCA benefits since his paralyzing accident." (Doc. 28 at 4.) He insists that "[h]e raised Jones Act liability as an alternative theory only" and his "primary reason for asserting alternative theories of liability in this case was to ensure a consistent result" in Plaintiff's Motion for Partial Summary Judgment (Doc. 30) where he argued that his receipt of LHWCA benefits interrupted prescription as to the non-H&P Defendants. (*Id*.)

In its reply, H&P IDC argues that "[s]imply put, Plaintiff concedes H&P IDC's motion should be granted and his claims against H&P IDC should be dismissed." (Doc. 36 at 2.)

### B. H&P Offshore's Motion to Dismiss

H&P Offshore argues that because it "was not formed as an entity until October 17, 2018," it did not exist at the time of the accident and therefore could not possibly have been at fault in any way for the accident. (Doc. 19-1 at 8-9, pointing the Court to H&P's Certificate of Formation (Doc. 19-2) and excerpts from its 2019 Form 10-K filed with the U.S. Securities and Exchange Commission (Doc. 19-3).) Furthermore, because Plaintiff failed to allege H&P Offshore's possible successor liability as the successor to H&P IDC, H&P Offshore cannot be liable under this theory. (*Id*. at 9-10.) Furthermore, since H&P IDC, as Plaintiff's LHWCA employer, cannot be liable to Plaintiff because of its immunity from a tort suit, neither can H&P Offshore as successor to H&P IDC. (*Id*. at 10 (citing *Parker v. McDermott, Inc.* No. 89-4269, 1990 WL 223001 (E.D. La. Dec. 18, 1990)).)

Plaintiff responds that H&P Offshore's assertion that it did not exist at the time of the subject accident rests on documents not properly before the Court in this Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. (Doc. 29 at 3.) Insofar as H&P Offshore's claim that it cannot be liable as a successor to H&P IDC since the latter is immune as Plaintiff's LHWCA employer, Plaintiff agrees that his claims are "covered by LHWCA" (*id*. at 4) but insists that this "determination must be applied throughout the case to all issues – including prescription" where LHWCA payments "serve as an interruption of Louisiana's prescription for third-party tort claims" (*id*. at 5 (citations omitted).

H&P Offshore replies that the documents supporting its contention that it did not exist at the time of the accident can be considered by the Court in this 12(b)(6) motion to dismiss since

they are the kind of which the Court can take judicial notice, i.e. documents "the accuracy of which cannot reasonably be questioned." (Doc. 37 at 2 (citations omitted).) H&P Offshore concludes by stating that, given Plaintiff's acknowledgement that LHWCA applies, "Plaintiff concedes H&P Offshore's motion should be granted and his claims against H&P Offshore should be dismissed on this basis." (*Id*. at 3.)

### C. H&P Inc.'s Motion to Dismiss

H&P Inc. argues this Court lacks both general and specific personal jurisdiction over it since its affiliations are not so continuous and systematic as to render it essentially "at home" in Louisiana and further, it did not "engage[] in specific actions within Louisiana that justifies specific jurisdiction" in this case. (Doc. 24 at 1.) The fact that H&P Inc. may be a parent corporation to the other H&P Defendants does not give this Court jurisdiction over it. (Doc. 24-1 at 2 (citation omitted).) H&P Inc.'s Rule 12(b)(2) motion is supported by the affidavit of Robert Mackey which states that H&P Inc. did not own Rig 107 and did not employ Plaintiff. (*Id*. at 3.) H&P Inc. argues that it has had no systematic and continuous contacts with Louisiana which would support general jurisdiction (*id*. at 6-7), nor does H&P Inc. have any contacts with the forum related to Plaintiff's accident (*id*. at 7-9). In the alternative, H&P Inc. adopts the same arguments made by H&P IDC in its motion, namely that Plaintiff's exclusive remedy against the H&P Defendants is for workers' compensation under the LHWCA. (*Id*. at 10.)

In his opposition, Plaintiff states that "[g]eneral personal jurisdiction is not an issue here." (Doc. 32 at 5.) As to specific jurisdiction, however, Plaintiff argues that H&P Inc.'s contention that it was not involved in the accident "is wholly untested – no discovery has taken place." (*Id*. at 6.) Therefore, Plaintiff asks for limited discovery on the jurisdictional issue. (*Id.*) On the issue of LHWCA as Plaintiff's alleged exclusive remedy against H&P Inc., Plaintiff argues that "H&P,

5

Inc. may not invoke the LHWCA exclusivity bar applicable to its subsidiary without showing it and its subsidiaries operate as a 'single entity'" and it has not done so. (*Id*. at 7.) In the alternative, Plaintiff reiterates his argument that if there is LHWCA coverage (and he concedes there is, at least as between Plaintiff and H&P IDC), then his receipt of LHWCA benefits control the prescription issue raised in Plaintiff's Motion for Partial Summary Judgment on Timeliness. (*Id*. at 8.)

H&P Inc. replies that Plaintiff has conceded there is no general jurisdiction over H&P Inc. and has failed to meet its burden to show specific jurisdiction. (Doc. 39 at 1-2.) In order to justify the jurisdictional discovery which Plaintiff requests, he must "specify what facts it believes discovery would uncover and how those facts would support personal jurisdiction." (*Id*. at 3 (quoting *Libersat v. Sundance Energy*, 437 F. Supp. 3d 557, 573 (W.D. La. 2020)).) Plaintiff has failed to do this in his opposition (*id*.) and the allegations in his Petition focus on employment with H&P IDC and his injury on rig 107. "But H&P Inc. was not Plaintiff's employer" and "[did] not own, operate, or control the area where the incident occurred." (*Id*. at 2 citing Doc. 24-1, Mackey Affidavit.) However, because Plaintiff has made "collective, singular" allegations against all three H&P entities, "H&P Inc. [also] has grounds to invoke the [LHWCA] exclusivity provisions." (*Id*. at 3-4.)

III.    **STANDARD**

    A. **12(b)(6) Motion to Dismiss**

"Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346–47 (2014) (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De* C.V., No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

In deciding a Rule 12(b)(6) motion, all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex*., 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

7

### B. 12(b)(2) Motion to Dismiss

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N'Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* (quoting *Buillion v. Gillepsie*, 895 F.2d 213, 217 (5th Cir. 1990) (citations omitted) ("Proof by preponderance of the evidence is not rquired.")). However, in assessing whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "will not 'credit conclusory allegations, even if uncontroverted.' " *Sealed Appellant 1 v. Sealed Appellee 1*, 625 Fed.Appx. 628, 631 (5th Cir. 2015) (quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)); *cf.* Fed. R. Civ. P. 12(d) (listing only motions under Rule 12(b)(6) and 12(c) as requiring conversion to summary judgment if evaluated on matters outside the pleadings).

## IV. DISCUSSION

### A. Failure to State a Claim – Exclusivity of LHWCA

All three motions claim the benefit of LHWCA's exclusivity provision. That is the primary basis for H&P IDC's motion. (Doc. 18 at 1-2.) H&P Offshore and H&P Inc. raise the issue in the alternative. (Doc. 19 at 2; Doc. 24 at 2.) 33 U.S.C. § 905(a) provides:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

33 U.S.C. § 905.

Thus, ordinarily, if a worker is covered by LHWCA, he is barred from pursuing a tort remedy against his LHWCA employer. 33 U.S.C. § 905(a).[5] The Court has already ruled in this case that Plaintiff's injuries occurred while he was working as a floor hand on a drilling rig located on a fixed platform on the Outer Continental Shelf and therefore the law governing this case is the OCSLA. (Doc. 53; *Parkman v. W&T Offshore, Inc.*, No. 20-883, 2021 WL 2544405 (M.D. La. June 21, 2021) (deGravelles, J.).) Therefore, LHWCA is the law governing the relationship between Plaintiff and his employer. *Ross v. W&T Offshore, Inc.*, No. 17-8689, 2019 WL 186670, at *1 (E.D. La. Jan. 14, 2019) ("Section 1333(b) of the OCSLA makes workers' compensation coverage under the LHWCA an injured employee's exclusive remedy against an employer for injuries occurring on a fixed platform on the Outer Continental Shelf.").

---

[5] There is an exception to this general rule, discussed *infra*, when the employer intentionally injures its employee.

9

While Plaintiff makes alternative allegations of Jones Act and general maritime law liability against the H&P Defendants, these allegations are conclusory and insufficient to support a claim. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) ("We do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.' (citing *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."); *Skinner v. Ard*, --- F. Supp. 3d ----, No. 19-66, 2021 WL 388830, at *11 (M.D. La. Feb. 3, 2021) (deGravelles, J.) (dismissing claims against sheriff because allegations were "wholly conclusory").

In addition, Plaintiff specifically alleges that his claim is governed not by maritime law but by OCSLA (Doc. 1-1 at 5, ¶ 2), and moved for summary judgment on this basis which the Court granted (Doc. 53).

Except as to the paragraphs naming each H&P Defendant as a foreign corporation and stating the agent for service of process for each (Doc. 1-1 at 7, ¶¶ 16, 17, 18), Plaintiff fails to distinguish between or among the three H&P Defendants, lumping them together as "H&P" or "H&P Defendants." This is true for Plaintiff's allegations of fault against the H&P Defendants. (*Id*. at 10-11, ¶¶ 32-38.) It is also true of his naming "H&P" as Plaintiff's employer. (*Id*. at 8, ¶ 21; *see also* Plaintiff's affidavit, Doc. 1-1 at 35-36, ¶¶ 1-2, where Plaintiff states he "was working on an offshore drilling rig for H&P" at the time of his injury and "H&P's insurer" paid him workers' compensation benefits under the LHWCA.)

This is a form of improper "shotgun pleading" and the Petition is subject to dismissal for this reason alone. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir.

2015; *Garig v. Travis*, No. 20-654, 2021 WL 2708910, at *19 (M.D. La. June 30, 2021) (deGravelles, J.). In addition, by lumping them together as one, Plaintiff is alleging that all three H&P Defendants were his employer and responsible for his LHWCA payments. Therefore, all three are entitled to the benefits of the LHWCA's exclusivity provision.

An issue separately raised by H&P IDC is whether Plaintiff has pled a cause of action for H&P's intentional injury of Plaintiff. (Doc. 18-1 at 13-14.) H&P IDC argues that "[b]ecause the Fifth Circuit does not recognize any intentional tort exception to the LHWCA's exclusive remedy provision, Plaintiff's substantial certainty claim must fail." (*Id*. at 14 (citing *Fisher v. Halliburton* 667 F.3d 602, 617 (5th Cir. 2012) and *Latimer v. Chet Morrison Contrs*., No. 11-806, 2013 WL 5592967 (W.D. La. Oct. 9, 2013)).) Plaintiff fails to address this issue in his opposition. (Doc. 28.) However, the issue is not as straightforward as H&P IDC suggests.

In his Petition, under the sub-heading "Substantial certainty claims or alternatively Jones Act negligence and maintenance and cure against the H&P Defendants," (Doc. 1-1 at 10), Plaintiff makes the following allegations pertinent to this issue. He "brings claims for substantial certainty against the H&P Defendants." (*Id*. at ¶ 33.) He claims they were "negligent and grossly negligent" in particular ways. (*Id*. at ¶ 35.) "Additionally, and in the alternative, the incident sued hereupon was substantially certain to occur. The dangerous nature and manner of work being performed made it substantially certain that Plaintiff would be injured during the highly dangerous lift, yet Defendants proceeded nonetheless." (*Id.* at ¶ 36.) "As a result of Defendant's negligence, gross negligence and/or intentional torts, Plaintiff suffered severe physical injury." (*Id*. at ¶ 37.)

An employer's intentional injury of his employee is arguably an exception to LHWCA's exclusivity provision. Contrary to H&P IDC's suggestion, the Fifth Circuit has not foreclosed this exception but, as of this time, has not formally recognized it. In *Johnson v. Odeco Oil & Gas Co.*,

11

864 F.2d 40, (5th Cir. 1989), the plaintiff claimed injury due to his employer's failure to evacuate its rig workers in the face of an oncoming hurricane. After rejecting plaintiff's claim of seaman status, it considered the plaintiff's alternative argument that, despite LHWCA coverage, he could sue his employer for intentional tort. (*Id*. at 43-44.)

> The district court parsed somewhat conflicting authorities on the reach of the LHWCA over intentional torts, but it found that ODECO's alleged conduct clearly did not constitute an intentional tort. We agree with the district court's latter conclusion and find it unnecessary to examine the scope of the LHWCA in this case. Even if that statute is not so exclusive as to preclude a lawsuit by an employee for an intentional tort committed by his employer, this is not such a lawsuit. Johnson does not seriously allege, nor did he produce any summary judgment proof, that ODECO deliberately left its employees on OBM No. 1 for the purpose of exposing them to injury by a hurricane. As his brief plainly states, the most he can aver is that ODECO made a decision which any reasonable person would foresee might result in injury. This is negligence language, not the description of any intentional tort with which we are familiar. Hence, as the district court noted, Johnson's exclusive remedy lies within the LHWCA.

*Id.* at 44 (footnote omitted).

The Court again considered but did not decide the issue in the context of the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651–54,[6] where the plaintiffs argued their entitlement to sue for the intentional torts of their employers. *Fisher v. Halliburton*, 667 F.3d 602 (5th Cir. 2012). The Court stated

> It is a recurring theme in workers' compensation law that injuries arising from an employer's intentional tort do not fall within the scope of coverage for compensation purposes. A number of courts have held in the LHWCA context, for example, that an employee can sue his employer if the employer committed an intentional tort. This circuit has not yet expressly recognized this intentional tort "exception" to coverage under the LHWCA, but the cases so holding typically reason that an injury occurring as a result of an employer's intentional act is not "accidental" for purposes of the LHWCA's "accidental injury" definition of injury. It has also been said that such an injury is not the result of a third party's willful act because employers are not third parties under the LHWCA. Importantly, the cases take a very narrow view of the types of intentional injury that lie outside of the

---

[6] "[T]he compensation protocol provided by the LHWCA governs a claim under the DBA except to the extent the DBA specifically modifies a provision of the LHWCA." *Fisher v. Halliburton*, 667 F.3d at 610 (5th Cir. 2012) (citation omitted).

> LHWCA—the cases consistently require that the employer have had a specific intent or desire that the injury occur.
>
> The facts of this case do not fit the mold of the type of intentional tort that some courts heretofore have recognized as an exception to coverage under the LHWCA. Plaintiffs have not challenged the district court's determination below that there is no evidence in the record "support[ing] the proposition that [KBR] desired that any of the drivers be injured or killed in an attack by Iraqi insurgents." Accordingly, this case does not require us to determine whether the DBA includes within its scope injuries caused by an employer's intentional assault of an employee with the specific desire to injure the employee.

*Id.* at 617-18 (citations omitted).

Although the Fifth Circuit has not decided the issue, several federal district courts within the Fifth Circuit, along with Louisiana state courts, have weighed in including, most recently, *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 1984327 (E.D. La. Apr. 27, 2020). In denying a defendant's motion for summary judgment on this issue, the court stated

> While "the LHWCA does not have a specific provision expressly stating that an employer's intentional tort is an exception to the statute's 'exclusive remedy' provision ... a number of court decisions, from Louisiana and from other jurisdictions, have stated that an employer's intentional tort is an exception to the exclusive remedy provision of the LHWCA and that, in such cases, the employee may bring a tort action against the employer." However, those courts "strictly ... applied the exception for intentional torts." For example, " '[n]othing short of a specific intent to injure the employee falls outside of the scope of the [LHWCA].' " Therefore, a plaintiff must show that the defendant had a specific intent to injure the plaintiff.

*Id*. at *11 (citations omitted).

In *Taylor v. Transocean Terminal Operators, Inc.*, 2000-0604 (La. App. 4 Cir. 3/14/01), 785 So. 2d 860, writ denied, 2001-1057 (La. 6/15/01), 793 So. 2d 1243, the court considered an appeal of the dismissal of plaintiff's injury claim based on the LHWCA's exclusivity provision. After an extensive analysis of the issue, the court reversed, finding that intentional torts are an exception to that provision. (*Id.*) The court stated

> [O]ver the last twenty years, a number of court decisions, from Louisiana and from other jurisdictions, have stated that an employer's intentional tort is an exception to the exclusive remedy provision of the LHWCA and that, in such cases, the employee may bring a tort action against the employer.

*Id.* at 862.

In recognizing this exception, the Court explained

> [T]he understanding of the LHWCA that we have adopted in this present appeal is, not only in concert with the views of the various courts to have considered the matter over the last 20 years, but is in accord with the mainstream of worker's compensation law. Consequently, we believe that our understanding most likely comports with the intent of Congress in enacting the LHWCA.

*Id.* at 864. *See also Holmes v. Pacarini USA, Inc.*, 2011-1033 (La. App. 4 Cir. 3/7/12), 88 So. 3d 671, 673, writ denied, 2012-0781 (La. 5/25/12), 90 So. 3d 1047 (following *Taylor* in finding "an intentional tort [is] not subject to the exclusive remedy provision of the LHWCA.")

Other courts have at least recognized the possibility of a claim for intentional tort by an employee against his LHWCA employer but, in each case found that the pleadings were insufficient in alleging same. *See e.g. Latimer v. Chet Morrison Contractors*, No. 11-806, 2013 WL 5592967, at *4 (W.D. La. Oct. 9, 2013) (recognizing that the Fifth Circuit in *Fisher* "does point out cases which suggest that such an exception could be recognized on the basis that an intentional act is not 'accidental' for purposes of 'accidental injury' under § 902(2)" but finding plaintiff's failure to allege the employer's specific intent to injure plaintiff was fatal to such a claim); *Smith v. XTO Offshore, Inc.*, No. 11-1487, 2012 WL 1247224, at *3 (E.D. La. Apr. 12, 2012) ("[O]ther courts that have recognized this exception 'take a very narrow view of the types of intentional injury;' nothing short of an employer having a specific intent or desire that the injury occur is enough to remove the LHWCA's exclusive jurisdiction requirement." (citations omitted)).

Although Plaintiff's Petition alleges that H&P intentionally harmed Plaintiff, Plaintiff fails to respond in his opposition to this motion to H&P IDC's arguments regarding his intentional tort

14

allegations (namely that there is no exception to LHWCA exclusivity for intentional tort). On this ground alone, HCP's motions on this issue could be granted.

> "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n. 10 (S.D. Tex. 2003)); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (*citing United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.")); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation ... is a failure to brief and constitutes waiver.").
>
> "By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *Kellam v. Servs.,* No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), aff'd sub nom. *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

*Russell v. Parkview Baptist Sch., Inc.*, No. 19-760-JWD-EWD, 2021 WL 1147162, at *18 (M.D. La. Mar. 25, 2021); *see also JMCB, LLC v. Bd. Of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue); *see also United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (finding that relator waived argument as to how certain write-offs fell within a particular provision of the False Claims Act).

There is yet another ground for dismissing Plaintiff's intentional tort allegations: like Plaintiff's allegations regarding Jones Act and maritime jurisdiction, they are largely conclusory. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210; *Skinner*, 2021 WL 388830, at *11.

Finally, while not entirely clear, it appears from Fifth Circuit dicta that, even if the Court were to consider Plaintiff's "substantial certainty" allegations as more than conclusory, they would likely still be insufficient since they do not maintain that H&P had specific intent to injure Plaintiff or desired his injury. In *Fisher v. Halliburton*, the Fifth Circuit suggested that if an intentional tort exception to § 905(a) exists, it will require allegations of specific intent, and not merely allegations of "substantial certainty" to support the claim. "[T]he cases [recognizing the intentional tort exception] take a very narrow view of the types of intentional injury that lie outside of the LHWCA—the cases consistently require that the employer have had a specific intent or desire that the injury occur.", *Fisher*, 667 F.3d at 618. *See also Latimer*, 2013 WL 5592967, at *4; *Smith*, 2012 WL 1247224, at *4. *Dempster*, 2020 WL 1984327, at *12 which seemed to apply the substantial certainty as well as the specific intent standard in denying summary judgment on the intentional tort question. ("Here, the Court cannot determine at the summary judgment stage whether Avondale had a specific intent to injure Decedent. Accordingly, summary judgment is inappropriate at this stage." *** "Here, the Court cannot determine at the summary judgment stage whether Avondale was substantially certain that Decedent would contract lung cancer based on its conduct.")

Plaintiff alleges that "[t]he dangerous nature and manner of work being performed made it substantially certain that Plaintiff would be injured during the highly dangerous lift, yet Defendants proceeded nevertheless." (Doc. 1-1 at 11 at ¶ 36.) Even giving Plaintiff's Petition the most

16

generous reading possible, he fails to meet the specific intent standard suggested in *Fisher*. Therefore, for all of these reasons, dismissal is appropriate.

### B. H&P Offshore - Failure To Plead Successor Liability

H&P Offshore argues that it was not in existence at the time of the accident and therefore it cannot be liable. Plaintiff argues that the documents upon which H&P Offshore relies cannot be considered for purposes of the motion to dismiss. The Court need not resolve this dispute. Because H&P Offshore is alleged by Plaintiff to be Plaintiff's employer, H&P Offshore's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim is granted for the same reasons given in connection with H&P IDC's motion.

### C. H&P Inc. - Personal Jurisdiction

Like H&P Offshore, H&P Inc. is also lumped together in Plaintiff's Petition with H&P IDC and therefore he alleges that all three H&P Defendants were Plaintiff's LHWCA employer. As such, H&P Inc.'s is entitled to dismissal for the same reasons given in connection with the granting of H&P IDC's motion. However, H&P Inc. has raised a personal jurisdiction defense. "As a general rule, when the court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether a claim was stated by the complaint." 5B Arthur R. Miller, *Federal Practice & Procedure (Wright & Miller)* § 1351 (3d ed. 2021). That said, some courts have chosen not to follow this general rule and granted relief on substantive grounds without deciding the personal jurisdiction issue. *See, e.g. Burns v. Wilderness Ventures, Inc.*, No. 12-4188, 2012 WL 3779069, at *1 (N.D. Ill. 2012)("For the following reasons, the Court grants Defendant's Motion to Dismiss for improper venue under Rule 12(b)(3), and therefore need not reach issues of personal jurisdiction under Rule 12(b)(2)."); *Doe 171 v. Order of Saint Benedict*, No. 11-1406, 2012 WL 1410320, at *3 (D.P.R. 2012) (where court granted Rule

12(b)(6) motion to dismiss on statute of limitations grounds, and therefore did not consider personal jurisdiction arguments); *Kanna v. Shinseki*, No. 11-004, 2012 WL 1123362 (S.D. Ohio 2012) (where court granted Rule 12(b)(6) motion to dismiss on statute of limitations grounds, and therefore did not consider personal jurisdiction arguments).

In this case, Plaintiff concedes that there is no general personal jurisdiction. (Doc. 32 at 5 ("General personal jurisdiction is not at issue here.").) Plaintiff also concedes that "[i]f the statements in the [H&P Inc.'s supporting] affidavit are accurate, then the Court lacks specific personal jurisdiction over H&P Inc." *Id*. at 6. Yet, Plaintiff requests discovery to test the validity of the affidavit. (*Id*.) Here, the Court declines this request. Even if subsequent discovery revealed contacts sufficient to warrant the imposition of this Court's jurisdiction over H&P Inc., H&P Inc. would be entitled to dismissal for the same reasons supporting the dismissal of H&P Offshore and H&P IDC, i.e. their entitlement to immunity from tort based on their status as Plaintiff's employer. While Plaintiff argues that "H&P Inc. may not invoke the LHWCA exclusivity bar applicable to its subsidiary without showing it and its subsidiaries operate as a 'single entity'" (*id*. at 7), it is Plaintiff who has chosen in his Petition to treat all three H&P entities as a single entity, and thus, as Plaintiff's employer.

In sum, the Court grants Helmerich & Payne Inc.'s *Motion to Dismiss Under Rule 12(b)(2) and Alternatively Rule 12(b)(6)* (Doc. 24) for lack of specific personal jurisdiction over H&P, Inc.

V.      **CONCLUSION**

For the foregoing reasons, *Helmerich & Payne International Drilling Co.'s Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims for Failure to State a Claim* (Doc. 18), *Helmerich & Payne Offshore LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims for Failure to State a Claim*

18

(Doc. 19), and *Helmerich & Payne, Inc.'s Motion to Dismiss Under Rule 12(b)(2) and Alternatively Rule 12(b)(6)* (Doc. 24) are GRANTED.

Signed in Baton Rouge, Louisiana, on July 7, 2021.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**