## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JASON PARKMAN** | * | **CIVIL ACTION** |
| | * | **NO. 3:20-cv-883** |
| **VERSUS** | * | |
| | * | **JUDGE JOHN W.** |
| **W&T OFFSHORE, INC.; BAKER HUGHES** | * | **DEGRAVELLES** |
| **ENERGY SERVICES LLC; BAKER HUGHES** | * | |
| **OILFIELD OPERATIONS LLC;** | * | **MAG. JUDGE ERIN** |
| **HALLIBURTON COMPANY;** | * | **WILDER-DOOMES** |
| **HALLIBURTON ENERGY SERVICES, INC.;** | * | |
| **HELMERICH & PAYNE, INC.; HELMERICH** | * | |
| **& PAYNE INTERNATIONAL DRILLING CO;** | * | |
| **AND HELMERICH & PAYNE** | * | |
| **OFFSHORE, LLC** | * | |

**********************************************

## PLAINTIFF'S OPPOSITION TO
## AGR'S MOTION FOR SUMMARY JUDGMENT

The plaintiff, Jason Parkman, opposes the motion for summary judgment filed by AGR/FJ Brown ("AGR").[1]

## I.

### INTRODUCTION

In this serious personal-injury matter, AGR presents compelling grounds to deem its employee, Mr. Scott Brubaker, to be a borrowed servant of W&T Offshore, Inc. ("W&T"). But as a matter of law, even if Mr. Brubaker were W&T's borrowed servant, AGR's motion still fails. That is so because (1) Louisiana law, and not the Longshore and Harbor Worker's Compensation Act ("LHWCA"), controls the analysis of Mr. Parkman's state law tort claim against third party tortfeasors like AGR and W&T, and (2) Louisiana "dual employer" doctrine renders *both* a general employer (AGR) and a borrowed employer (W&T) solidarily liable for the employee's torts committed upon

---

[1]    Rec. Doc. 131, AGR's motion for summary judgment.

third parties.[2] In other words, even if Mr. Brubaker is a borrowed servant of W&T, AGR

is still liable for his torts under Louisiana law. Consequently, AGR is not entitled to

summary judgment. All of this is explained below.

## II.

### Brief Factual and Procedural background.

Mr. Parkman was seriously injured on an offshore platform owned and operated

by W&T.[3] Mr. Brubaker was W&T's "company man" on the platform at the time of the

incident.[4] Relevant here, before the incident, AGR had entered into a master-service

agreement with W&T for the provision of services.[5] As AGR has expressly admitted in

its answer filed in this case (as well as in depositions) Mr. Brubaker was *employed* by

AGR.[6] The judicial admission in AGR's answer is binding and legally conclusive of the

relationship between Mr. Brubaker and AGR, and it may not be revisited now.[7] Any

suggestion by AGR that Mr. Brubaker was, himself, an independent contractor of AGR

---

[2]     *Morgan v. Manufacturer*, 710 So. 2d 1077 (La. 1998).

[3]     *See generally*, Rec. Doc. 53, p. 6 of 12, prior summary judgment order reciting that injury
        occurred on fixed platform on the outer continental shelf.

[4]     Rec. Doc. 131-1, p. 1 of 3, AGR's uncontested material fact nos. 4-5.

[5]     Rec. Doc. 131-7, pp. 2-12 of 12, W&T/AGR master-service agreement.

[6]     Rec. Doc. 106, AGR's answer, at p. 6 of 8, ¶18 ("AGR admits that Mr. Brubaker was
        directly employed by AGR."); *id*. at p. 7 of 18, ¶25 AGR admits that Mr. Brubaker was
        employed by AGR to act as a "company man" for W&T."). *See also* Exhibit 3,
        Deposition of Stephen Walker, p. 92:10-11 ("Q: I represent AGR in this case, the
        employer of Mr. Brubaker."); Exhibit 4, Deposition of Keim Davis, p. 128:8-9 ("Q: Good
        afternoon, Mr. Davis. I represent AGR, who was the employer of Scotty Brubaker.").

[7]     *E.g., State Farm Fire & Cas. Co. v. Flowers*, 854 F. 3d 842, 845 (5th Cir. 2017); *Davis
        v. A.G. Edwards and Sons, Inc.*, 823 F. 2d 105, 107-108 (5th Cir. 1987); *Cooper v.
        Cornerstone Chem. Co*., 2022 WL 19354 at *5 (E.D. La. 2022); *Sandoval as next friend
        of J.C.C. v. U.S.*, 2021 WL 4990820 at *2 (S.D. Tex. 2021); *Stemcor USA, Inc. v. Am.
        Metals Trading, LLP*, 489 F. Supp. 3d 511, 522 (E.D. La. 2020).

(and not an AGR employee) is legally foreclosed. Mr. Parkman sued AGR as the employer of Mr. Brubaker.[8]

AGR has now moved for summary judgment.[9] Notably, AGR's motion is not based on any argument that Mr. Brubaker was not actually negligent. Instead, AGR contends that, whatever Mr. Brubaker's fault, he had become a borrowed servant of W&T and, therefore, AGR has no liability for Mr. Brubaker. But as will be explained, AGR's motion fails as a matter of law.

### III.

### LAW AND ARGUMENT

While AGR's motion centers on *facts*, the *law* is largely dispositive of it. Three points set the stage for the ultimate conclusion that AGR's motion must be denied. *First*, this incident occurred on the outer continental shelf, and so OCSLA adopts Louisiana state law as surrogate federal law unless Louisiana law is inconsistent with federal law. *Second*, neither the LHWCA nor federal law generally have anything to say on a borrowed-servant theory for claims against third-party tortfeasors (*i.e.*, non-LHWCA employers) like AGR and W&T. Those claims, and potential defenses to them, are governed solely by Louisiana state law. And *third*, Louisiana law holds *both* a general employer (like AGR) and a borrowed/special employer (like W&T) solidarily liable for the employee's torts committed on third parties. Consequently, the application of Louisiana law here requires that AGR's motion be denied.

---

[8]    Rec. Doc. 81, amended complaint, pp. 4-5 of 10, ¶18 ("The W&T Company Man on the drilling rig at the time who participated in this meeting was named Scott Brubaker. Mr. Brubaker was working as the W&T Company Man, but was also directly employed by Defendant AGR.").

[9]    Rec. Doc. 131, AGR's motion for summary judgment.

### III-A.

**OCSLA applies and adopts Louisiana law as surrogate federal law unless Louisiana law is inconsistent with federal law.**

This Court has already ruled that (1) this incident occurred on a platform on the outer continental shelf,[10] and, therefore, (2) OCSLA applies.[11] As this Court recognized, OCSLA has legal effects. By virtue of the express directive in 43 U.S.C. § 1333(a)(2)(A), OCSLA adopts "tort law . . . of the adjoining state (in this case, Louisiana) unless there is an inconsistent federal law."[12] Accordingly, Louisiana law controls all tort law issues in this case *unless* there is an inconsistent federal law to supplant it.

### III-B.

**Louisiana law controls; not the LHWCA or any other federal law.**

The crux of AGR's motion—a theory that a borrowed servant doctrine may transfer liability for Mr. Brubaker from AGR to W&T—must be decided under Louisiana law. Neither the LHWCA nor federal law are relevant in that analysis.

### III-B(1).

**Neither the LHWCA nor any other federal law imposes borrowed-servant rules on a claim against a third-party tortfeasor like AGR or W&T.**

In light of OCSLA's statutory adoption of Louisiana tort law, it is unclear why AGR's motion fails to address whether Louisiana law embraces AGR's theory of

---

[10]    Rec. Doc. 53, court order on summary judgment, pp. 5-8 of 12.

[11]    *Id*. at p. 8 of 12.

[12]    *Id*. ("The tort law is that of the adjoining state (in this case, Louisiana) unless there is an inconsistent federal law. 43 U.S.C. § 1333(a)(2)(A); *Bloodsaw v. Helmerich & Payne, Inc.*, 177 F.3d 978, No. 98-30536, 1999 WL 197115, at *1 (5th Cir. 1999) ('Bloodsaw's injury occurred on the Outer Continental Shelf off the coast of Louisiana, and under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq., his claim against Vastar is governed by Louisiana's tort law.') (citing *Cormier v. Clemco Servs. Corp.*, 48 F.3d 179, 181 (5th Cir. 1995)).").

transferring liability where a borrowed employer is concerned. Presumably, AGR is implying that the LHWCA, itself, sets forth the substantive law applicable to Mr. Parkman's third-party tort claims against it and W&T and that the borrowed servant doctrine under that body of law controls. But this theory is incorrect.

Under OCSLA, the LHWCA might supplant Louisiana law on the role of the borrowed servant doctrine on a third-party claim *only* if it were inconsistent with Louisiana law. Yet no statutory provision of the LHWCA even addresses the issue.

While it is true that 33 U.S.C. § 905(a) of the LHWCA prohibits claims by an employee against his employer or a borrowed employer,[13] neither AGR nor W&T are *Mr. Parkman's* employer. Mr. Parkman's claims against AGR and W&T—and these entities' relationship to *Mr. Brubaker*—does not implicate § 905(a) in any way. Nor are AGR or W&T a "vessel" under § 905(b) which might trigger that LHWCA rules for those claims. In short, § 905 is not at issue at all. Nor is 33 U.S.C. § 933(i)'s prohibition against suing a *co-employee* at issue.

The only provision of the LHWCA that is even tangentially implicated is 33 U.S.C. § 933(a), which permits Mr. Parkman to bring claims against non-vessel third parties who are neither his employer nor a co-employee. Yet, as the U.S. Fifth Circuit

---

[13]     *E.g.*, *Leblanc v. AEP Elmwood, LLC*, 946 F. Supp. 2d 546, 549-50 (E.D. La. 2013) ("Under 33 U.S.C.A. § 905(a) of the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), '[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee.' The Fifth Circuit had interpreted this provision to mean that '[w]orker's compensation under the LHWCA is the exclusive remedy for an employee against his employer because the Act bars all common law tort actions against the employer.' *Melancon v. Amoco Production Co.,* 834 F.2d 1238, 1243 (5th Cir.1988). Borrowed employees are also covered by the LHWCA, entitling them to worker's compensation under this act and also barring common law tort actions against the borrowing employer. *Id.*").

5

made clear in *Fontenot v. Dual Drilling*, this provision of the LHWCA necessarily relies upon external state-law for these claims:

> Section 933 establishes procedures by which third-party claims are to be prosecuted in the context of a predicate LHWCA claim. Any such third-party claim, unless it is a §905(b) or (c) claim against a vessel, must be based on some external authority. In this case, because the third party tortfeasor was not a vessel, the external authority is the statutory law of the State of Louisiana.[14]

Consequently, in *Fontenot*, the U.S. Fifth Circuit ruled that Louisiana's comparative fault law—and not some other federal apportionment scheme—applies to the issue of fault allocation in a third-party claim.[15] As the court ruled, when a third-party claim is created entirely by state law, so are the potential defenses to it. Indeed, no other result is legally possible:

> [W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state law is in conflict with federal law . . . More importantly, however, the proportionate-liability scheme imposed by Louisiana law cannot be *inconsistent* with federal law because there would be no third-party cause of action in this case had Louisiana not provided one.[16]

And for the avoidance of any conceivable doubt, maritime law equally is not at issue because it does not apply of its own force to an incident on an offshore platform.[17]

---

[14]   *Fontenot v. Dual Drilling Co.*, 179 F.3d 969, 976 (5th Cir. 1999) (internal citations omitted).

[15]   *Id*. ("Obviously, it is not inconsistent with OCSLA or LHWCA for Louisiana to impose third-party liability; § 933 expressly contemplates such an external law. If the scope of the third-party liability, as well as defenses to it, are established by state law, state law governs the question of whether a proportionate-liability rule applies.").

[16]   *Id*. (internal quotations omitted) (emphasis original).

[17]   *Bertrand v. Shell Oil Co*., 489 F.2d 293, 294-95 (5th Cir. 1973).

Ultimately, in light of *Fontenot*, it is clear that Louisiana law controls all aspects of Mr. Parkman's claims against third-party tortfeasors like AGR and W&T. Any analysis of those claims—including potential defenses—must be decided under Louisiana law, alone. The LHWCA is not inconsistent with Louisiana's rules on the issue because—but for Louisiana law—these claims and any defenses to them would not exist.

### III-B(2).

### AGR's authorities are irrelevant.

AGR's motion cites two cases for its theory that, where there is a borrowed employer, the nominal employer has no liability.[18] But neither of these are Louisiana cases and neither rests on Louisiana law. The first of these cases, *Perron*, concerns an employee of a borrowed servant who tried to sue his co-employee's nominal employer in violation of the prohibition in § 933(i).[19] And the second of these cases, *Denton*, is a railroad injury case that appears to have arisen under Mississippi law—and has nothing to do with OCSLA, which was not enacted until many decades later.[20]

Notably, neither of these cases stands for the proposition that the Court should— or even *could*—cast aside the express choice-of-law directive in OCSLA. That is doubly

---

[18]   AGR's motion, Rec. Doc. 131-2, p. 4 of 18, at n. 4 (citing *Perron* v. *Bell Maintenance & Fabricators, Inc.,* 970 F.2d 1409, 1412 (5th Cir. 1992) and *Denton v. Yazoo & M V. Railway Co.,* 284 U.S. 305 (1932)).

[19]   In *Perron*, one employee and another co-employee were both borrowed servants of the same company, but had different nominal employers. The Fifth Circuit ruled that the first employee could not sue the second employee's nominal employer because § 933(i) bars co-employee suits and equally bars theories based on respondeat superior for co-employees who, themselves, are protected by § 933(i).

[20]   *E.g.*, *Butler v. Superior Energy Serv. Inc.*, 2017 WL 1148687 at *5 (W.D. La. 2017) ("First, by way of context only, OCSLA was enacted in 1953 to extend the jurisdiction and control of the United States government to the seabed and subsoil of the outer Continental Shelf and to its natural resources . . .").

true in light of the U.S. Fifth Circuit's holding in *Fontenot* regarding third-party claims. Louisiana law controls.

**III(C).**

**Under Louisiana law, both a general and borrowed employer are solidarily liable for the employee's torts; AGR is not entitled to summary judgment.**

With the focus properly on Louisiana law, the Louisiana Supreme Court's holding in *Morgan v. Manufacturer* is dispositive.[21] In *Morgan*, the Court held that "where a general employer is engaged in the business of hiring out its employees under the supervision of another employer, the general employer remains liable for the torts of the 'borrowed' employees.'"[22] By way of background, in *Morgan*, a temporary labor supplier (Worktec) agreed to loan its employees to another company (Goldin).[23] Worktec recruited the employees, paid for their insurance, handled administrative matters relating to the employee, and billed Goldin for the hours that the employee worked.[24] In turn, Goldin instructed the worker what to do and provided him tools and equipment to do the work.[25] Worktec would pay the worker based on his hours.[26]

In ruling that both Worktec *and* Goldin were responsible as "dual employers" for the employee's torts, the Court explained that modern vicarious liability in Louisiana centers not merely on *control* (which Goldin had) but rather on *enterprise liability*—

---

[21]   *Morgan v. Manufacturer*, 710 So. 2d 1077 (La. 1998).

[22]   *Id.* at 1078.

[23]   *Id.*

[24]   *Id.*

[25]   *Id.*

[26]   *Id.* at 1078-79.

8

which Worktec had.[27] For a company like Worktec—which was in the very business of providing workers, as AGR did here—loaning its employees out *was* its business. When those employees did Goldin's work, they were equally doing Worktec's work under enterprise theory regardless of control. And so it was only right to hold Worktec liable for the employee's torts despite Worktec having passed control over the employee onto Goldin. Here is the court's explanation:

> To a temporary services provider such as Worktec, loaned employees are its stock in trade. Though the essence of Worktec's business is to profit from its employee's labors, a significant feature of its business is to pass control of the details of the work to its customers. However, Worktec retains ultimate and overriding authority over its loaned workers. This makes the application of the traditional 'right of control' test problematic. Additionally, Worktec only bills its customers for the hours its employees actually work for those customers. The loaned employees are furthering the business of Worktec at the identical time when they are also furthering the business of the special employer. Put simply, both employers had contemporaneous control over Hines, and both contemporaneously benefitted from his labor. It is therefore reasonable that considering the overlapping control and shared financial interest that they share liability.
>
> . . .
>
> The labor provided by Worktec is its product, and Worktec should bear the expenses and risks associated with its product, in addition to reaping the benefits derived therefrom. Since modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of 'enterprise liability,' Worktec's failure to exercise direct supervisory control over Hines should not preclude its liability. *We therefore hold that where, as here, a general employer is in the business of hiring its employees out under the supervision of others, the general employer remains liable*

---

[27]   *Id.* at 1083 ("While the borrowed servant defense focuses on which employer controlled the employee's actions, modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of 'enterprise liability.'").

> *for the 'borrowed' employees' torts under La. Civ. Code
> art. 2320.*[28]

*Morgan* demonstrates that AGR's motion rests on incorrect legal premises. *Even if* Mr. Brubaker were deemed to be a borrowed servant of W&T, *Morgan* directs that AGR may still be held liable for his torts. Indeed, the arrangement between AGR, W&T, and Mr. Brubaker, in many ways, parallels the arrangement at issue in *Morgan*. To put a finer point on it, AGR's own motion admits that it is a "labor supplier to the oil field industry."[29] Similar to the facts of *Morgan*:

- AGR vetted resumes and recruited potential workers like Mr. Brubaker for a labor position that W&T needed filled;[30]

- Once approved, a worker like Mr. Brubaker would then generate a timesheet, invoice AGR, and then AGR would bill the client (W&T);[31]

- AGR would handle certain administrative tasks for Mr. Brubaker, including getting his insurances in place;[32]

- On the job site, W&T maintained direct control and supervision over Mr. Brubaker, and provided him tools;[33] and

- W&T did not have the power to "fire" Mr. Brubaker or terminate his relationship with AGR; rather, its sole authority was to preclude his role on the W&T job site.[34]

These facts are very similar to *Morgan*. Ultimately, because AGR's very business model is loaning employees like Mr. Brubaker out to companies like W&T, the enterprise liability theory adopted in *Morgan* renders AGR a "dual employer" over him. W&T's

---

[28]    *Id*. at 1083-84 (emphasis added).

[29]    Rec. Doc. 131-2, p. 5 of 8, AGR motion.

[30]    Rec. Doc. 137-1, pp. 4-5 of 13, AGR corporate deposition.

[31]    *Id*.; *similar at id*. at pp. 11-12 of 13.

[32]    Exhibit 1, deposition of Mr. Brubaker, p. 81.

[33]    Rec. Doc. 137-2, p. 3 of 4, affidavit of Mr. Brubaker at ¶¶11 and 13-14.

[34]    Rec. Doc. 137-3, p. 5 of 6, W&T corporate deposition at depo pages 226-27.

control and supervision over Mr. Brubaker do not exonerate AGR for liability deriving from its very business model. Consequently, even if Mr. Brubaker was a borrowed servant of W&T, AGR remains vicariously solidarily liable for his torts.

## IV.

### CONCLUSION

In light of OCSLA and *Morgan*, AGR's motion lacks merit. It should be denied.

Respectfully submitted,

ARNOLD & ITKIN LLP

*/s/  Roland Christensen*
Roland Christensen, Roll #37440
rchristensen@arnolditkin.com
6009 Memorial Drive
Houston, Texas 77007
Tel: 713.222.3800
Fax: 713.222.3850

CLAYTON, FRUGE, & WARD
A.M. "Tony" Clayton (#21191)
Michael P. Fruge (#26287)
Richard J. Ward, III (#32267)
3741 La. Highway 1 South
Port Allen, Louisiana 70767
Tel: 225.344.7000
Fax: 225.383.7631

Attorneys for the plaintiff, Jason Parkman

## CERTIFICATE OF SERVICE

I certify that a copy of this pleading was served upon all counsel of record this 20th day of February, 2023 by e-filing it into the CM/ECF system, which will automatically deliver a copy to all counsel.

*/s/  Roland Christensen*
Roland Christensen